UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ESTEBAN CINTRON,

                              **Petitioner,**                    **07 Civ. 1058 (KMK) (PED)**

                                                                 <u>**REPORT AND**</u>
        *- against -*                                            <u>**RECOMMENDATION**</u>

**BRIAN FISCHER, Superintendent of Sing**
**Sing Correctional Facility,**

                              **Respondent.**
----------------------------------------------------------x

**TO:   THE HONORABLE JUDGE KENNETH M. KARAS**
        **UNITED STATES DISTRICT JUDGE**


## I. <u>INTRODUCTION</u>

        *Pro se* petitioner Esteban Cintron ("petitioner"), presently incarcerated at Green Haven

Correctional Facility[1], seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 from his

February 26, 2002 conviction in Orange County Court (Rosenwasser, J.).  Petitioner was

convicted, after a bench trial, of one count of sodomy in the first degree, one count of sodomy in

the third degree, one count of sexual abuse in the first degree, and one count of endangering the

welfare of a child.  He was sentenced to a determinate term of eighteen years for first degree

sodomy, an indeterminate term of one and one-third years to four years for third degree sodomy,

a determinate term of seven years for first degree sexual abuse, and a determinate term of one

year for endangering the welfare of a child, all to run concurrently.  In his petition, petitioner

---

[1] When petitioner filed his petition for a writ of *habeas corpus* he was incarcerated at Sing Sing
Correctional Facility in Ossining, New York. However, on or around July 26, 2010, petitioner
was transferred to Green Haven Correctional Facility in Stormville, New York. (Pet'r's Mem.
(Docket No. 14).)

contends that (1) the evidence presented at trial was insufficient to establish his guilt of first degree sodomy (Pet. for Habeas Corpus ¶ 13 (Docket No. 2)) and (2) the verdict was against the weight of the evidence (*Id.*). This petition comes before me pursuant to an order of reference dated August 6, 2007 (Docket No. 11), transferred to the undersigned on January 12, 2009 (Docket No. 13). For the reasons set forth below, I respectfully recommend that this petition be **DENIED.**

## II. BACKGROUND

### A.     The Crimes

On February 27, 1999, Y.A.[2] moved to Middletown, New York after living in Puerto Rico for twelve years. (Trial Tr. vol. 1, 20, Feb. 20, 2002 (Docket No. 15).)  She moved into a five-room apartment with her mother, step-father[3], older sister, older brother, petitioner Esteban Cintron (*Id.*), and petitioner's two children (*Id.* at 28).  At the time, Y.A. was fifteen years old. (*Id.* at 15.)  Petitioner is ten years older than Y.A.. (*Id.* at 20.)

Roughly three months after Y.A. arrived in Middletown, in the spring of 1999 (*Id.* at 25), she was watching wrestling with petitioner in petitioner's bedroom (Trial Tr. vol. 1, 45, Feb. 21, 2002).  Y.A. testified that she was lying on the bed face down when she felt petitioner come up behind her, lower her pants, hold her arms, and attempt to put his penis in her buttocks. (Trial Tr. vol. 1, 21-24, Feb. 20, 2002.)  Y.A. was able to successfully push petitioner off of her (*Id.* at 24) after she threatened to call for her mother (Trial Tr. vol. 1, 32, Feb. 22, 2002).

Shortly after the first incident, still in the spring of 1999, petitioner, who was lying in bed, asked Y.A. to bring him a glass of water. (*Id.* at 25.)  As she bent down to hand petitioner

---

[2] The victim's full name is withheld pursuant to N.Y. Civ. Rights Law § 50-b.
[3] Y.A. indicated that she lived with her step-father but Y.A.'s mother testified that this man was actually her live-in boyfriend. (Trial Tr. vol. 2, 95-96, Feb. 25, 2002 (Docket No. 16).)

the glass, he grabbed her arm, told her he "needed" her, took out his penis, and placed it in her mouth. (*Id.* at 25-26.) Y.A. testified that she tried to kick the bed where petitioner's young children were sleeping in an attempt to wake them but she was unsuccessful. (*Id.* at 28.) She also testified that she was unable to scream for help because petitioner's penis was in her mouth. (Trial Tr. vol. 1, 14, 19, Feb. 22, 2002.) Y.A. then felt something warm inside her throat and petitioner let her go. (Trial Tr. vol. 1, 29, Feb. 20, 2002.) The following evening petitioner slapped Y.A.'s buttocks and told her not to "say nothing to anyone." (*Id.* at 37.)

In the summer of 1999, a third incident occurred between Y.A. and petitioner. Y.A. was in her bedroom cleaning her dresser when petitioner came up behind her, held her hands, lowered her pants, and told her not to move or it would hurt. (*Id.* at 31.) She told him not to "do that" because she was his sister but he responded that he did not care. (*Id.*) At the time, no one else was home at their house. (*Id.* at 30-31.) Petitioner penetrated Y.A. from behind and held her against her dresser for five minutes, during which time she was unable to get away. (*Id.* at 33.) Petitioner was positioned behind Y.A. at all times so that she could not see him. (*Id.* at 31.) Y.A. then moved and felt a pain in her anus at which point petitioner released her. (*Id.*) Y.A. went into the bathroom and when she lowered her pants to clean herself she realized she was bleeding. (*Id.* at 34.) Y.A. testified that her anus continued to hurt and she was unable to have bowel movements for two days following the incident. (*Id.* at 35.) She also testified that she had never received an injury to her rectum besides this one time. (*Id.* at 48.)

Y.A. testified that petitioner attempted to penetrate her both anally and vaginally on several other occasions but she did not let him. (*Id.* at 35-36.) She also testified that she told her best friend about the incident of oral sex and that she told her boyfriend about most of what

3

occurred between herself and petitioner (*Id.* at 37-38), but that she did not tell her mother because she did not think her mother would believe her (*Id.* at 38).

**B.    Arrest and Trial**

On March 19, 2001, roughly two years after the incidents with petitioner began, Y.A. reported the incidents to Magali Sepulveda, a social worker at Y.A.'s school. (Trial Tr. vol. 1, 41, Feb. 20, 2002.) Also on March 19, 2001, Y.A. and Sepulveda spoke with Investigator Thompson of the Orange County Child Abuse Investigation Unit to file charges against petitioner. (Trial Tr. vol. 2, 58, Feb. 25, 2002.) That same day, Y.A. moved out of her house. While Y.A. testified that her mother kicked her out of the house after she filed charges against petitioner (Trial Tr. vol. 1, 41, Feb. 20, 2002), Y.A.'s mother testified that Y.A. chose to leave (Trial Tr. vol. 2, 114-15, Feb. 25, 2002).

Investigator Thompson testified that he interviewed petitioner on March 19, 2001, in response to Y.A.'s allegations. (*Id.* at 40.) After reading petitioner his Miranda rights (*Id.* at 44), Thompson explained to petitioner the allegations against him, specifically that Y.A. claimed petitioner attempted to have sexual intercourse with her and that he had forcible sodomy, both anal and oral, with her (*Id.* at 48). Petitioner denied the allegations. (*Id.* at 52.) However, after several hours of questioning, petitioner signed a written statement indicating that he often got a "hard-on" when wrestling with Y.A. and that he sometimes "rubbed" against her when he "got hard." (Resp't's Mem. 6 (Docket No. 10).) He also admitted that on one occasion he accidentally ejaculated on her buttocks. (*Id.* at 7.) However, petitioner never admitted to committing the specific sexual acts alleged by Y.A.. After petitioner signed the statement, Investigator Thompson arrested him. (*Id.* at 6.)

4

On October 2, 2001, a grand jury indicted petitioner on two counts of sodomy in the first degree, two counts of sodomy in the third degree, two counts of sexual abuse in the first degree, one count of attempted sodomy in the first degree, one count of sexual abuse in the third degree, and one count of endangering the welfare of a child. Brief of Appellant-Defendant at 4, *People v. Cintron*, 786 N.Y.S.2d 532 (App. Div. 2004) (No. 02-05393).

On February 18, 2002, the day before trial commenced, Y.A. was examined at Horton Medical Center by Patti Page-Cannoinier, a registered nurse qualified in the examination of sexual assaults. (Trial Tr. vol. 1, 52, Feb. 22, 2002.) Ms. Page-Cannoinier performed a rectal examination on Y.A. and took photographs which were used at trial. (*Id.* at 66-67.) She testified that she observed "quite a few" (*Id.* at 83-84) white and pink lesions and areas of scar tissue on Y.A.'s perineal area and other areas of scar tissue extending into Y.A.'s rectum (*Id.* at 77-80). She also testified that based on their appearance, the scars were over six months old at the time of the examination. (Trial Tr. vol. 2, 9, Feb. 25, 2002.)

Dr. Craig VanRoekens, chair of the emergency department at Horton Medical Center, also testified about the scarring on Y.A.'s rectum. He testified that the scars were at least several weeks to a month old at the time of the examination. (*Id.* at 20.) He explained that the scars were consistent with force "tearing the area apart" (*Id.* at 23) and inconsistent with scars found on patients he had previously seen who had consensual anal intercourse (*Id.* at 25). However, Dr. VanRoekens conceded that the severity of scarring from anal intercourse, consensual or non-consensual, could depend on several factors such as whether lubrication was used and the age and size of the participants. (*Id.* at 34.) He also conceded that he had no knowledge of whether consensual anal intercourse between a 15 year old girl and a 25 year old man could cause

5

scarring like that found on Y.A.'s rectum. (*Id.*)  Finally, he was unable to determine whether all of the scarring on Y.A.'s rectum occurred at the same time. (*Id.* at 35.)

At the close of the people's case in chief, the defense made a general motion to dismiss based on the prosecution's failure to satisfy its burden of proof. (*Id.* at 90.)  The prosecution consented to dismissal of the charge of sexual abuse in the third degree. (*Id.* at 90-91.)  Judge Rosenwasser otherwise denied the motion. (*Id.* at 94.)

Y.A.'s mother testified for the defense that shortly after Y.A. moved in with her in Middletown, she began to have problems with Y.A.. (Trial Tr. vol. 2, 97, Feb. 25, 2002.) According to Y.A.'s mother, Y.A. began cutting class (*Id.* at 98-99), smoking marijuana (*Id.* at 101), stealing (*Id.* at 103), having sex with her boyfriend (*Id.* at 100), and being generally disrespectful.  Petitioner would often discipline Y.A. when she acted this way, which caused Y.A. to dislike petitioner. (Trial Tr. vol. 1, 4, Feb. 22, 2002.)  Several days before filing charges against petitioner, Y.A. and petitioner got in a serious argument regarding her relationship with her boyfriend. (*Id.* at 5.)

At the close of the defense's case, prior to summation, the defense attorney renewed his previous motion to dismiss. (Trial Tr. vol. 2, 119, Feb. 25, 2002.) Judge Rosenwasser, sitting as fact-finder, convicted petitioner of one count of sodomy in the first degree, one count of sodomy in the third degree, one count of sexual abuse in the first degree, and one count of endangering the welfare of a child, all relating to the incident of anal intercourse in Y.A.'s bedroom in the summer of 1999. (*Id.* at 146-47.) *See also* Brief of Appellant-Defendant at 11, *People v. Cintron*, 786 N.Y.S.2d 532 (App. Div. 2004) (No. 02-05393).)  Petitioner was acquitted of the remaining charges.

6

**C.**     **Sentencing**

On June 11, 2002, Judge Rosenwasser sentenced petitioner to a determinate term of

eighteen years for sodomy in the first degree, an indeterminate term of one and one-third years to

four years for sodomy in the third degree, and a determinate term of seven years for sexual abuse

in the first degree, all to run concurrently. (Trial Tr. vol. 2, 18, June 11, 2002.)  The court also

sentenced petitioner to a one year term in county jail for endangering the welfare of a child, also

to run concurrently, and five years of post release supervision. (Trial Tr. vol. 2, 18-19, June 11,

2002.)  Finally, the court imposed a permanent order of protection. (*Id.* at 18.)

**D.**     **Direct Appeal**

Petitioner, through counsel, appealed his conviction claiming that (1) the evidence was

insufficient to support his conviction of first degree sodomy, (2) the guilty verdict was against

the weight of the evidence, and (3) his sentence was illegal or in the alternative, excessive. Brief

of Appellant-Defendant at 3, *People v. Cintron,* 786 N.Y.S.2d 532 (App. Div. 2004) (No. 02-

05393).  On November 8, 2004, the Appellate Division affirmed petitioner's conviction holding

that petitioner's insufficiency of the evidence claim was unpreserved for appellate review and "in

any event," the evidence was legally sufficient to establish first degree sodomy. *People v.*

*Cintron,* 786 N.Y.S.2d 532, 533 (App. Div. 2004).  The court also held that the verdict was not

against the weight of the evidence and the sentence was not illegal. *Id.*  Petitioner then sought

leave to appeal to the New York Court of Appeals, which was denied on December 28, 2004.

*People v. Cintron,* 790 N.Y.S.2d 655 (2004).

**E.**     **State Collateral Proceedings**

On or around June 1, 2005, petitioner, acting *pro se*, filed a motion to vacate his

conviction pursuant to New York Criminal Procedure Law § 440.10. (*See* Resp't's Mem. Ex. 7.)

7

In this motion, petitioner alleged that he was denied meaningful and effective assistance of counsel during his trial. (*Id.*)  The court denied petitioner's motion on January 9, 2006 and notice of entry of that decision was served on petitioner on March 15, 2006. (Affirmation in Opp'n to Pet. for Habeas Corpus ¶ 5 (Docket No. 9).) Petitioner did not seek leave to appeal.

## F.     Habeas Corpus Proceedings

On or around December 11, 2006[4], petitioner, acting *pro se*, filed the current petition for a writ of *habeas corpus* in the United States District Court, Southern District of New York.  In his petition, he asserts two of the three claims raised on direct appeal, specifically that "the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that petitioner committed sodomy in the first degree" (Pet. for Habeas Corpus ¶ 13), and that "the verdict was against the weight of the evidence." (*Id.*)

On February 14, 2007, Judge Wood issued an order directing petitioner to show cause by affirmation why the current petition should not be dismissed as time-barred. *Cintron v. Fischer,* No. 07 CV 1058 (S.D.N.Y. Feb. 14, 2007) (Docket No. 3). Petitioner responded by affirmation on or around February 28, 2007. (Pet'r's Affirmation (Docket No. 7).)  On or around April 23, 2007, respondent filed his affirmation and memorandum in opposition to the petition for a writ of *habeas corpus*. Respondent argues that petitioner's claims are procedurally barred from review, and in any event, are without merit. (Affirmation in Opp'n to Pet. for Habeas Corpus ¶ 5.)

---

[4] Petitioner does not indicate, in his petition, the date on which he gave his petition to prison officials so that it could be mailed to this Court. Therefore, the exact date that petitioner "filed" his petition is unclear. *See Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001) (per curiam) (finding that a *habeas* petition from a *pro se* prisoner is filed when it is delivered to prison officials for mailing to the district court).  However, the petition was signed on December 11, 2006 and the envelope accompanying the petition was postmarked on December 12, 2006. Therefore, I assume for the purposes of this Report and Recommendation that petitioner delivered his petition to prison officials, and thus "filed" his petition, on December 11, 2006.

Respondent "does not raise a statute of limitations defense," and concedes that the current petition is timely.[5] (*Id.* ¶ 5 n.4.)

## III. DISCUSSION

### A. Applicable Law

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d). The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

---

[5] Petitioner's *habeas* petition is timely by 60 days. Petitioner's conviction became final, and the one year limitations period began to run, on March 28, 2005, after the expiration of the 90 day period during which he could have sought a writ of certiorari. *See Ross v. Artuz*, 150 F.3d 97 (2d Cir. 1998). However, the one year limitations period was tolled for a period of 318 days, from June 1, 2005, when petitioner filed his C.P.L § 440.10 motion, until April 15, 2006, thirty days after notice of the state court's denial of that motion was served on petitioner. *See Bennett v. Artuz*, 199 F.3d 116 (2d Cir. 1999) (holding that a state-court petition is "pending" from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures). Under C.P.L. § 450.15, a movant may appeal the denial of a § 440.10 motion "provided that a certificate granting leave to appeal is issued pursuant to [C.P.L. §] 460.15." N.Y. Crim. Proc. Law § 450.15 (McKinney 1984). Under C.P.L. § 460.10(4), an application for a C.P.L. § 460.15 certificate for leave to appeal must be made "within thirty days after service upon [the applicant] of a copy of the order sought to be appealed." N.Y. Crim. Proc. Law § 460.10(4) (McKinney 1994); *see also People v. Washington*, 657 N.E.2d 497, 498 (N.Y. 1995) (holding that "service by the prevailing party is necessary under C.P.L. 460.10 in order to commence the time period for the other party to take an appeal").

1.    **Timeliness Requirement**

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of

limitations. *See* 28 U.S.C. § 2244(d). The statute provides four different potential starting points

for the limitations period, and specifies that the latest of these shall apply. *See id.* § 2244(d)(1).

Under the statute, the limitation period is tolled only during the pendency of a properly filed

application for State post-conviction relief, or other collateral review, with respect to the

judgment to be challenged by the petition. *See id.* § 2244(d)(2). The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court. The limitation
> period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct
> > review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State
> > action in violation of the Constitution or laws of the United States is removed, if
> > the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially recognized by
> > the Supreme Court, if the right has been newly recognized by the Supreme Court
> > and made retroactively applicable to cases on collateral review; or
> > (D) the date on which the factual predicate of the claim or claims presented could
> > have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or
> other collateral review with respect to the pertinent judgment or claim is pending shall
> not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a

petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstances stood in his way' and prevented timely filing." *Holland v. Florida*,

130 S. Ct. 2549, 2262 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). In the

Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," *Smith v.*

*McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have

"prevented [the petitioner] from filing his petition on time," *Valverde v. Stinson*, 224 F.3d 129,

134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable

tolling must "demonstrate a causal relationship between the extraordinary circumstances on

which the claim for equitable tolling rests and the lateness of his filing – a demonstration that

cannot be made if the petitioner, acting with reasonable diligence, could have filed on time

notwithstanding the extraordinary circumstances." *Valverde*, 224 F.3d at 134.

**2.      Exhaustion Requirement**

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his

claims in state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); *id.* § 2254(c) (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented"). The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claims. *Rose v. Lundy*, 455 U.S. 509,

518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." *Petrucelli v. Coombe*, 735 F.2d 684, 687 (2d Cir. 1984) (citing *Smith v. Phillips*, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court, absent a showing of cause and prejudice, or a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the

State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. *See, e.g., Reyes*, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," *Harris v. Reed*, 489 U.S. 255, 262 (1989), or "actual innocence," *Schlup v. Delo*, 513 U.S. 298 (1995)), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Padilla v. Keane*, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.      Procedural Default

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. *Harris*, 489 U.S. at 262; *see also Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "'fairly appears" to rest primarily on state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at

13

740).  A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question."  *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

**4.     AEDPA Standard of Review**

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims.  28 U.S.C. § 2254(d)(1)-(2).  This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review.  *Williams v. Taylor*, 529 U.S. 362, 402 (2000).  For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment.  *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable

facts." *Williams*, 529 U.S. at 413. A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); *see Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.     Analysis of Petitioner's Claims**

**1.     Sufficiency of the Evidence**

Petitioner claims that the evidence presented at trial was insufficient to establish contact between his penis and Y.A.'s anus and therefore does not support his conviction for first degree sodomy. At the time of petitioner's conviction, under New York law, "[a] person [wa]s guilty of sodomy in the first degree when he or she engage[d] in deviate sexual intercourse with another person . . . [b]y forcible compulsion." N.Y. Penal Law § 130.50(1), *amended by* 2003 N.Y. Laws 264, § 20. Deviate sexual intercourse was then defined to include "sexual conduct between persons not married to each other consisting of contact between the penis and the anus." *Id.* § 130.00(2); *amended by* 2003 N.Y. Laws 264, § 12; *see People v. Ogborn*, 865 N.Y.S.2d 746, 747 & n.1 (App. Div. 2008). Actual penetration is not a necessary element of first degree sodomy. *See People v. Furman*, 576 N.Y.S.2d 306, 307 (App. Div. 1991). Respondent contends that

petitioner's claim is procedurally barred from federal *habeas* review, and in any event, is without merit. As discussed below, petitioner's claim is procedurally barred from federal *habeas* review because the state appellate court dismissed the claim on independent and adequate state law grounds. Thus, I do not reach the merits of petitioner's claim. I respectfully recommend that this claim be denied.

### a.     The Appellate Division's Decision Was Based on Independent and Adequate State Law Grounds

In order to determine whether a state court's reference to state law constitutes independent grounds for its judgment, the court must follow the "plain statement" requirement laid out in *Michigan v. Long,* 463 U.S. 1032 (1983). Under *Long,* a federal court may not reach the federal question on review when there is a "'plain statement' that a [state court's] decision rest[ed] upon adequate and independent state grounds." *Id.* at 1042. The Supreme Court has held that federal *habeas* review of a claim is precluded, even when a state court has considered the merits of the claim in the alternative, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Stewart v. Senkowski,* No. 00-CV-0806JBW, 03-MISC-0066JBW, 2003 WL 21508320, at *6 (E.D.N.Y. June 16, 2003) (quoting *Harris,* 489 U.S. at 264 n.10)[6]; *see Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir. 1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default ... even where the state court has also ruled in the alternative on the merits."); *Stewart,* 2003 WL 21508320, at *6 ("[T]he fact that the Appellate Division ruled, in the alternative, on the merits of petitioner's legal sufficiency claim does not help him."); *Harris,* 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative

---

[6] Unreported cases are being sent to *pro se* petitioner. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

holding."). However, if a plain statement of independent state grounds is lacking, the claim will

be preserved for federal *habeas* review. *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 (2d

Cir. 2000) (finding that federal review was permitted when the state court rejected petitioner's

claims as "*either* unpreserved for appellate review *or* without merit") (emphasis added).

Here, the appellate court that first heard petitioner's sufficiency of the evidence claim on

direct appeal held that this claim was "unpreserved for appellate review ... [and] [i]n any event,

[the evidence] was legally sufficient to establish that [petitioner] committed sodomy in the first

degree." *People v. Cintron*, 786 N.Y.S.2d 532, 533 (App. Div. 2004).  Since a ruling on the

merits "in any event" is treated as a ruling in the alternative, the state court's decision contained

a "plain statement" and thus, sufficiently rested upon independent state law grounds. *See Glenn

v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996) (finding that when a state court rules that a claim

is barred on state law grounds and then rules "in any event" on the merits, the ruling on the

merits is treated as being dealt with in the alternative and thus, the claim is unpreserved for

*habeas* review).

In addition to being independent of the merits of the federal claim, the state law grounds

upon which the state court rests must also be adequate to support its decision.  According to the

Second Circuit,

> [A] procedural bar will be deemed adequate only if it is based on a rule that is firmly
> established and regularly followed by the state in question. When a federal court finds
> that the rule is inadequate under this test the rule should not operate to bar federal review.
> Nonetheless, ... a federal court that deems a state procedural rule inadequate should not
> reach that conclusion lightly or without clear support in state law.

*Garcia*, 188 F.3d at 77. In determining the adequacy of a state procedural bar, the federal court

must look at the "particular application" of the rule. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir.

2003) (quoting *Lee v. Kemna,* 534 U.S. 362, 387 (2002)). Thus, the proper question is whether application of the state procedural rule is "firmly established and regularly followed in the specific circumstances presented in the case." *Cotto,* 331 F.3d at 240.

"[F]ailure to object at trial when required by New York's contemporaneous objection rule ... is an adequate ... state ground." *Jones v. Duncan,* 162 F. Supp. 2d 204 (S.D.N.Y. 2001) (citing *Wainwright v. Sykes,* 433 U.S. 72, 86, 90 (1977); *see also Drake v. Woods,* 547 F. Supp. 2d 253, 261-62 (S.D.N.Y. 2008) ("New York's contemporaneous objection rule may constitute an ... adequate state ground that procedurally bars federal habeas review."). New York's contemporaneous objection rule, codified in New York Criminal Procedure Law § 470.05, provides that an issue will be unpreserved for appeal unless the appellant objected to that issue during trial. N.Y. Crim. Proc. Law § 470.05(2); *see also People v. Thomas,* 407 N.E.2d 430, 432 (1980) ("[P]oints which were not raised at trial may not be considered for the first time on appeal."). In order to comply with this rule, a defendant's trial motion to dismiss for insufficiency of the evidence must be "specifically directed" at the alleged error to be preserved for appellate review. *See People v. Cona,* 399 N.E.2d 1167, 1169 n.2 (1979); *People v. Gray,* 652 N.E.2d 919, 921 (1995); *People v. Hawkins,* 900 N.E.2d 946, 950 (2008). Thus, a general motion to dismiss at the close of the people's case, as was made here, which fails to identify the precise defect later raised on appeal, is inadequate to preserve a sufficiency of the evidence claim for appellate review. *See e.g., Hawkins,* 900 N.E.2d at 951. Since defense counsel's motion in

the case at hand lacked the requisite specificity[7], the Appellate Division appropriately concluded

that petitioner's sufficiency of the evidence claim was unpreserved for appellate review.

Therefore, petitioner's sufficiency of the evidence claim is procedurally barred from

federal *habeas* review because the Appellate Division's decision sufficiently rested on

independent and adequate state law grounds.

**b.      Petitioner Cannot Show Cause and Prejudice**

A federal court may nonetheless review a procedurally barred claim if the petitioner is

able to demonstrate both cause for noncompliance with the state rule and prejudice resulting

from the constitutional violation. *See Stewart,* 2003 WL 21508320, at *7. Petitioner here has

failed to demonstrate either. In order to show cause, a petitioner must generally establish "that

some objective factor external to the defense impeded counsel's efforts to comply with the state's

procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). The mere fact that trial counsel

"failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite

recognizing it, does not constitute cause for a procedural default." *Id.* at 486. The Supreme

Court has held that "[s]o long as a defendant is represented by counsel whose performance is not

---

[7] In his motion, defense counsel stated:

> Judge, I make just a standard prima facie motion. I understand the Court must consider
> testimony at this junction in the light favorable to the People. I would say there is not
> intercourse with respect to the first count of the indictment. There was not deviate sexual
> intercourse in as much as the People didn't prove the forcible compulsion aspect with
> regard to Count Two. The same application with regard to Count Three. The same
> application certainly with regard to Count Four. The same application with regard to
> Count Five and Counts Six, Seven and Nine. And with respect to that, Judge, I would ask
> that the People did not make out each and every element of the case to a prima facie
> effect with regard to those counts of the indictment, and I would seek a dismissal at this
> point and a prima facie effect with regard to all the counts.

(Trial Tr. vol. 2, 91-92, Feb. 25, 2002.) This pro forma oral application failed to "specifically
direct" the trial court's attention to the issue subsequently raised on appeal: whether the evidence
supporting Count Five was sufficient to establish the "contact" element of first degree sodomy.

constitutionally ineffective ... [there is] no inequity in requiring [the defendant] to bear the risk of

attorney error that results in a procedural default." *Id.* at 488.  Petitioner raises no claim here that

his trial counsel was ineffective[8] nor does he argue that an external factor impeded his trial

counsel's ability to comply with the state's contemporaneous objection rule.

Nor has petitioner established prejudice.  In order to show prejudice, a petitioner must

show "not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked

to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions." *United States v. Frady,* 456 U.S. 152, 153 (1982) (emphasis in original).  Petitioner

has made no such showing here.

### c.    **Petitioner Cannot Show a Fundamental Miscarriage of Justice**

The Supreme Court has also recognized that in extraordinary cases, the principles of

comity and finality that form the basis of the cause and prejudice standard "must yield to the

imperative of correcting a fundamentally unjust incarceration." *Engle v. Isaac,* 456 U.S. 107, 135

(1982).  Thus, when it is clear that a constitutional violation has likely resulted in the conviction

of an innocent person, a federal *habeas* court "may grant the writ even in the absence of a

showing of cause for the procedural default." *Murray,* 477 U.S. at 496.  This occurs only in truly

exceptional cases since courts deem legitimate claims of actual innocence to be "extremely rare."

*Schlup,* 513 U.S. at 321.

The present case does not fall within the narrow realm of cases where this exception

might apply.  Petitioner has not come forward with any new evidence that he is actually innocent

---

[8] Petitioner's motion for post-conviction relief pursuant to C.P.L § 440.10 did assert an ineffective assistance of counsel claim. However, in that motion, petitioner did not assert that trial counsel was ineffective for failing to move for a directed verdict on specific sufficiency of the evidence grounds. He only asserted that trial counsel was ineffective because he advised petitioner not to testify at trial. (*See* Resp't's Mem. Ex. 7.)  In any case, petitioner does not raise a claim of ineffective assistance of counsel in his *habeas* petition.

of the crimes for which he was convicted. *See Schlup,* 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). To the contrary, petitioner admitted to Investigator Thompson that he did in fact "rub" against the Y.A. when he got "hard" and that he ejaculated on the Y.A.'s buttocks (Resp't's Mem. 6-7), evidence that weighs strongly against the possibility of petitioner's actual innocence.

Thus, this Court may not reach the merits of petitioner's sufficiency of the evidence claim as it is procedurally barred from federal *habeas* review and petitioner has established neither cause and prejudice nor a fundamental miscarriage of justice that would allow this Court to reach it. I respectfully recommend that petitioner's sufficiency of the evidence claim be denied.

**2.     Weight of the Evidence Claim**

Petitioner also contends that the guilty verdict was against the weight of the evidence presented at trial. Specifically, he argues that the victim's "weak, inconsistent and incredible testimony combined with petitioner's acquittal on the other charges in the case illustrates that the verdict was against the weight of the evidence." (Pet. for Habeas Corpus ¶ 13.) Respondent contends that petitioner's weight of the evidence claim is not cognizable on federal *habeas* review. (Resp't's Mem. 9.) Again, I agree with respondent.

**a.     Petitioner's Weight of the Evidence Claim is Not Cognizable on Habeas Review**

Unlike petitioner's sufficiency of the evidence claim, which is based on federal due process principles, petitioner's weight of the evidence claim is "an error of state law, for which habeas review is not available." *Douglas v. Portuondo,* 232 F. Supp. 2d 106, 116 (S.D.N.Y.

21

2002).  A weight of the evidence claim is a state law claim under New York Criminal Procedure Law § 470.15(5), which allows New York appellate courts to make weight of the evidence determinations. *See Garrett v. Perlman,* 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006).  Thus, in making his weight of the evidence claim, petitioner fails to allege a federal claim as is required under 28 U.S.C. § 2254(a), and instead alleges an error of state law not available for *habeas* review. *Id.* (citing *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)); *see also Estelle v. McGuire,* 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted).

Furthermore, petitioner's specific argument with regard to his weight of the evidence claim, that the Y.A.'s testimony was "weak, inconsistent and incredible," is not reviewable via *habeas corpus* because it involves a credibility determination within the province of the fact finder at trial. *See Garrett,* 438 F. Supp. 2d at 470 (stating that whether a witness' testimony was "incredible" or not involved a credibility determination within the "province of the jury" and was thus not reviewable in a *habeas* proceeding); *see also Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for [review] on [habeas] appeal.").

Therefore, this Court need not reach the merits of petitioner's weight of the evidence claim as it is not cognizable on federal *habeas* review. This claim must be denied.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that this petition be **DENIED**.

## <u>NOTICE</u>

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d),

or a total of seventeen (17) days, *see* Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United State Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: March 9, 2011
White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Kenneth M. Karas
United States District Court Judge
300 Quarropas Street
White Plains, New York 10601

Esteban Cintron, *pro se*
DIN # 02-A-3592
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

Andrew R. Kass, Esq.
Orange County Attorney
255 Main Street, County Government Center
Goshen, New York 10924